Welcome to Denver in July. Glad we finally got this case on a docket that worked for everybody. It's a good week to be in Denver. Looks like a lot of interest out there in the gallery, so welcome to the court if you haven't been here before. So we just have one case this morning, obviously, and I think you've been told that we're looking at 20 minutes, 20 minutes, and then five rebuttal, five rebuttal. And since this is the only case, we have some flexibility today and, you know, kind of use that time as you see fit. So if we're ready to go, let's get started. The case is 23-2180 Dunn v. Santa Fe Natural Tobacco Company. Mr. Wessler, you're first up. Thank you, Your Honor. Please record Matthew Wessler for the plaintiff's appellants. For decades, as public awareness about the deadly effects of cigarette spread, cigarette sales in the U.S. have waned, with one exception, Natural American Spirit. Unlike other conventional brands, the owners of Natural American Spirit recognized that consumers were desperate for less dangerous cigarettes and so deceptively reassured them that American Spirit cigarettes were less harmful by labeling every pack as, quote, natural and, quote, 100% additive free. It worked. According to the overwhelming common evidence produced in this case, including public health experts, scientific evidence, FDA studies, and even the defendant's own internal records, this uniform marketing campaign enabled the defendants to charge consumers a premium price for every pack. To this day, Natural American Spirits remain one of the only growing brands of cigarettes in a sea of decline. In its class certification decision below, the district court recognized that the lawsuit here, which seeks to hold the defendants accountable for their deceptive labeling and overcharge to consumers, was tailor-made for proceeding as a class because it involved a large group of people who had been harmed in the same way by the same conduct, but involved relatively small-dollar individual claims. And it also understood that the key element for both theories of liability in this case is primarily governed by the same objective reasonable consumer standard. For the first theory, what's known, the district court referenced it as the menthol theory. The court, therefore, correctly held that predominance was satisfied because the crucial common question, whether an objectively reasonable consumer would be deceived by the misleading statements that the tobacco in Natural American Spirit cigarettes was additive free, was capable of being answered with common proof. As the court explained, public health experts, scientific studies, and other evidence, including consumer surveys and the defendant's own records, overwhelmingly demonstrated that consumers interpret descriptors like natural and additive free to mean that these cigarettes are less harmful than other brands and do not contain any additives. How did the court satisfy the common proof test for menthol when you still have the standing issues and who can bring the suit in the first place, which the appellee says is one of the huge problems about lack of common proof for tobacco. It seems the two claims are similarly situated in terms of the finding of standing plaintiffs. So there's no doubt that the name plaintiffs have standing here. I think if I'm understanding your question correctly, it's this concept of ascertainability. Is there a threshold requirement before you reach? For the class action. Yeah, before you reach. The issue before us is whether the class action should be certified or not, whether that was an error. Well, I think the district court issued a split decision, certified one theory, refused to certify the other theory. One should be and one should not. Yeah. And so on this question of this threshold ascertainability requirement, the defendants rely for that theory on a line of cases that has really only developed in the Third Circuit. In those cases, a case called Carrera was the first Third Circuit decision to adopt this threshold ascertainability requirement. The court there said, yes, as a prerequisite to certifying a class before you reach the factors of Rule 23A or before you reach the factors of Rule 23B, there is this implicit threshold requirement that you be able to demonstrate not injury, respectfully, Your Honor. It isn't an Article III injury question. It's a question about whether you can identify who is in the class. Right, right. The question is who purchased these cigarettes and how can you prove that? Right. And so if that is a fundamental problem for one of the claims, it would seem it would be a problem for another claim. So how did the district court get around that? Well, the district court refused to think about that question the way the Third Circuit has. It did not conclude that this ascertainability question operates as a threshold requirement. But in any event, it said it didn't doom certification. I'm sorry, Judge Russell. In any event, it said it didn't doom certification, right? It didn't doom certification. So how should we be thinking about this, especially if that's reviewed for abuse of discretion, right? Yeah. So this court obviously has never weighed in on this question. There are about five or six circuits that have. One, the Third Circuit has said it exists as this threshold implicit requirement in Rule 23. Most of the other circuits, the Ninth Circuit, the Eleventh Circuit, the Seventh Circuit, have all looked at this question and have said, this isn't a question about how to identify class members as a matter of objective criteria. That is an easy threshold requirement to meet. Does the class definition tell you who's in the class? Here, under that understanding of, I guess, ascertainability, I don't think there's any question that the definition tells you who's in the class. It's everyone who purchased the cigarettes. What those circuits have said is this class member identification question, who is in the class, is best located in Rule 23B's superiority or manageability analysis or inquiry. It asks the question about comparatively whether a class action is the best or most superior way to pursue the litigation as opposed to other forms of litigation like individual claims. Is proof of purchase an element of each class member's claim? It's certainly true that, you know, if in an individual case, someone would have to come forward and show that they purchased the product. And here, all of the named plaintiffs who brought this case to begin have satisfied that requirement. There's no dispute that they've all purchased the product. I don't think that... But every class member is going to have to prove that he or she purchased an American Scarab cigarette, right? Definitely true at the back end. But I think what... What do you mean at the back end? But if this case ends in a position where there is a liability finding against the defendants and aggregate damages award, at that point, then anybody who purchased the class will be anybody who purchased the product, and individuals who are seeking to recover out of that damages award will have to show in some way that they purchased the product. Do they have the right to challenge each and every purported class member? Well, I actually don't think that's right in a case like this one. Why not? Yeah, I want to try to draw a distinction. Let me just broaden my question a little. You know, if the benefits of a class action are to avoid many trials for thousands, if not millions, of class members, and we're going to have many trials at the back end, then I'm wondering why many trials at the front end are eliminated here, and that goes to the predominant and superiority, frankly.  Anyway, so tell me why in the back end. I don't have to worry about, say, challenging individual claimants. Yeah, so let me answer the back end, and then, if I can, move to the question about where to locate this inquiry. So on the back end, I think this Court has already held that a defendant does not have a right to challenge individual claimants' efforts to recover out of a common fund in a very specific kind of case, in this kind of case. That's the In Re Urethane decision that this Court issued a few years ago. In that case, the defendants made the exact same argument that they're making here. We have a Seventh Amendment right, a due process right, to challenge every claimant who comes forward and files a claim form or an affidavit or anything like that, but in a case where there is a fixed liability, you know with certainty that the defendants have a fixed amount of liability for the alleged harm, and where that liability doesn't change one way or the other based on who comes forward to file a claim. It does change because a lot of consumers are going to have different reactions to the mislabeling, I think under your price premium theory. Well, no, I disagree with that. Under the price premium theory, it doesn't matter at all what any individual consumer may have thought or understood about the label. Why not? If he didn't think natural additive free meant safer and healthier, then he wasn't deceived. The price premium theory doesn't turn on individual consumer preferences. It turns on the amount that the defendants were able to extract based on the allegedly unlawful statement. And it's an objective standard, right? And that is an objective inquiry. The way it works is that in all of these states, there's an objective reasonable consumer standard. It does not turn on what any individual consumer may have thought about the statement. The only thing that... Yeah, but there is a subclass of consumers that that theory doesn't capture. Well, I'm sorry. Well, there's the mental... Which would be an objective standard, but your theory of liability is that not all consumers were deceived because some of them were not. I mean, I think it's a really important point, so I just want to be clear about this. The theory of liability doesn't turn on whether any individual consumer was deceived or not. The only thing it turns on is whether under the objective consumer reasonable standard, the statement itself was deceptive. And that question is not proven. I mean, that is the violation, the liability question. But I'm not sure that that's the damages question. Okay, so I'm liable. What do I have to pay? What you have to pay seems to me... I'm having trouble seeing how you're unhooking that from proof about what individuals overpaid because they were confused. Now, I'm not sure that's a relative determination because that problem is going to exist, whether it's done by class action or by a million individual suits. So it neither shows nor harms superiority. But I just don't see how it doesn't figure into how much has to be paid into damages by natural tobacco if they're found liable. So, yes, I think... So let me try to answer that. Before I do, I just want to say I think there are two cases... And you do need to come back to my back end. I will try to come back to your back end. I thought you... You go to that first. No, no, no, no. Go with G. Bellman and come back to me. Okay, I listened to him first and then you. So I'll go to you first. There are two cases that I think are really key on this question, Judge Liebel. The first is from the 11th Circuit. Is what? The first is from the 11th Circuit. It's called Carrullo. C-A-R-R-I-U-O-L-O, I believe. Okay? Now, the 11th Circuit looked... It's almost an identical kind of case. It was a case about... It's a car case, so it's not, you know, cigarettes. But the question there was, did GM put a misleading or deceptive five-star safety rating on its cars? Okay? This is under Florida Consumer Protection Law, the same statute that we have here. And what the 11th Circuit said is the analysis for liability is objective and causation and damages. It's all an objective inquiry. And the way that you measure damages is you ask, how much could GM have charged more for the statement that the car had a five-star safety rating, compared with the car without that statement? Yeah, I'm familiar with that case. Yeah. And that was... Yeah. Yeah, I know that. And I think that's exactly the way to think about this question here. A price premium theory for damages comes up with a single measure of damages. How much were the defendants able to charge more per pack, based on the unlawful statement? That's it. Can I ask you just a clarifying question about that? Yeah. So should we be thinking about the difference between the fact of damage or the fact of harm and the calculation of damage in how you're describing the...thinking about that case? Well, I mean, I think the fact of damage is distinct from the calculation of harm. Right. What we have to show here, we're not...we're just at the Rule 23 stage. Can the damages be proven on a class-wide basis? And when you think damages, can the harm be proven... Yes. ...with common proof? Correct. And that's different from calculating the damages? Correct. There has been no actual calculation. We just have to be, again, for predominance... And I'm going to try to get back, Judge Tinkovich, to your question.  ...for predominance. And we want to sit down. Two things. You've got to get back to him, but you were going to have a second. I did. I'm sorry. Thank you for reminding me. So just give me the side... I'll give you the side. ...and then move on to him, and then move on to her. The Ninth Circuit has a recent decision called LIDL, L-Y-T-L-E. Okay? That is, it is also on almost all fours with what's going on here in terms of the way that these cases, the way damages are proven in these cases. We'll figure that out by reading those cases. Okay.  Proceed down the queue. Okay. Judge Rossman. I forgot your question. That's fair. That's fair.  No, my question is really in terms of thinking about the elements of your claim and how we're to... Well, just think about if there's a Comcast problem, right, with the damaging model. Yeah. All we have to prove, all... At this stage, we're not... There isn't... We have to... Not even prove. That was the wrong use of the word. We are at the Rule 23 stage. Show. All we have to show is that the majority of the elements in this case are capable of common proof. That's it. We have, I think, done that. The District Court found that that was true for the question of whether the statements are deceptive or false. Okay? That is true for the question of causation. The District Court has a whole, you know, multiple pages. This is, you know, the fourth appendix, volume 18 to 30, where the court lays out the relevant evidence, common class-wide evidence that can support causation. There's statements throughout that section where the court is identifying how these statements drove the sale and the price premium that the defendants were able to charge. That leaves damages. Okay? And what the District Court said about damages on the mental side of things is there is no comcast problem, because the model that the plaintiff's expert has proposed to use here can calculate the isolated amount of damages for each unlawful statement. And the expert can come up with a specific number associated with the amount that the defendants were able to charge as a premium for putting that statement on the box. It's one number. It's one amount. And it applies across the board to everybody who approaches that. Why wouldn't the overstatement of damages under your expert's model result in individualized inquiries? There isn't an overstatement of damages. Well, let's assume that the District Court's understanding that you needed to account for multiple definitions or interpretations of the misleading terms would… I think that is an incorrect understanding of what this expert has proposed to do. I think this is, to me, a very key point, and I would encourage everybody to go look at the expert's expert report. Dr. Dubé, he is the leading expert in this way of calculating damages. It's at the second appendix volume, pages 195. But you don't disagree with the District Court's conclusion that he did not disaggregate the different definitions or potential interpretations, I guess. Yes, but his position, the way that this analysis works is you do not disaggregate. It doesn't matter what any particular plaintiff may have understood about these labels. And here's why. His analysis… You were in the process of giving us the citation. We're in the second appendix. Yeah, second volume, 195 to 197. All right, now proceed. His analysis takes as a given. It starts by assuming that a jury has already determined that the statement is unlawful. Okay? Once you reach that point, then under all of these state consumer protection statutes, you have to remove the statement. It cannot be included on the PAC. And so what he says is, at that point, what I will do is I will calculate a value assigned to that particular statement that the defendants were able to charge everybody. It's uniform across the board, and it doesn't matter what anybody… The 11th Circuit in Crewe makes this point really clearly. It doesn't matter what anybody might have thought about that statement. They paid more because it was on the box, and it was on the box unlawfully. What do we do about the disclaimer? Yep. So… And I do want to get back to your practice, you know, so I just want to flag that it's still out there, but… So, the disclaimer. The district court… I think it's a little hard to figure out in these findings of fact section in the district court's opinion exactly what's going on with the disclaimer. You can look, and this is at pages basically 20 through 31 of the fourth volume of the appendix, or it's actually 18, where the district court is kind of walking through the significance of the disclaimer. And there are a series of fact findings the district court includes that make it clear that there's record evidence demonstrating that the disclaimer is ineffective, that it does not work to alter consumer understandings of this… For any consumer. Sorry? For any consumer. For any consumer. It's class-wide common evidence. This is, as an example, paragraph 144 of the district court's fact findings, page 31 of the fourth volume of the appendix. It says, disclaimers about cigarette safety do not offset misperceptions of cigarette harms. On paragraph 88, it quotes an FDA study published in 2015 that looks at this specific disclaimer, and it says the FDA concluded that the disclaimer, and I'm just going to quote it here, did not convey any modified risk to consumers. It didn't cure the perception of how either less harmful these cigarettes were or anything else. And yet it has… What about the class of purchasers that… And this really is a causation question, that read the disclaimer and understood it to mean what it said it mean. And then just to segue to my back-end question, couldn't Santa Fe, at the back-end, challenge whether these purchasers actually bought cigarettes? And they ask, did you see the disclaimer? Yes. Did you think the cigarettes were safe? No. Do you think they're healthy? No. Right. Can't they do that on the back-ends? So, I think it's irrelevant, and here's why it's irrelevant. The plaintiff's theory of… And I'm in my red, so… They can or can't. Can they cross-examine a class-member claimant on the back-end? No. And I'm in my red, so if you don't… No, I'll give you your… Okay. Okay. So, the plaintiff's theory, in this case, assumes that to prove liability, assumes that everybody read the disclaimer. So, the reason I said it's irrelevant on the back-end, okay, is the plaintiff's theory… And then assumes that everybody would be misled. What the plaintiffs have to prove isn't anything about any individual reliance. Did you read it? What did you think? That's not the theory. The theory here is we can prove, under the objective reasonable consumer standards that exist in all of these states, that even if everybody read the disclaimer, along with everything else on the pack, that an objective consumer would have been misled. Now, they may lose. Okay? The plaintiffs may lose on that question. Okay? So, should the district court have assumed, based on your pleadings, that the disclaimer at this stage was ineffective? I'm sorry. Should the district court have assumed the disclaimer was ineffective? No. What the district court should have done is it should have not resolved the merits question about the effect of the disclaimer. It should have said, proof of the significance or effect of the disclaimer is a merits question, but it can be resolved class-wide, and if the defendants are successful in convincing a fact-finder that the disclaimer cures whatever potential deception exists for the other statements, then that will be a fatal similarity for the class. Everybody in the class will lose if that's correct, because the inquiry is objective. So, there will be one answer for everybody across the board, and what the district court instead did is it said, well, I think the disclaimer is curative or effective, and so I'm resolving that question at the Rule 23 stage, but that is not, you know, this court, every court has uniformly recognized that that kind of merits inquiry isn't appropriate at the Rule 23 stage. Doesn't Wal-Mart do say you can peek at the merits as kind of a holistic Rule 23 inquiry? Yes. And this court has said the same thing. Most courts recognize that you can take a peek at the merits, but this isn't the peek. What would have been a peek here is if you had an unambiguous disclaimer without any contrary evidence in the record demonstrating anything about its effectiveness. At that, if you had a record like that, the district court might be in a position to say, you know, I think there's no doubt that this thing does what I'm being told it does. But there is paragraph after paragraph after paragraph in the record where the district court is identifying class, common class-wide evidence that disclaimers as a general matter and this specific disclaimer are ineffective. And so when you're faced with that situation, two competing views, we're not saying we're right about this, but we're saying we will rely on, number one, the fact that everybody read the disclaimer, and number two, the record evidence we have in the record that the district court recognized exists, that the disclaimer is ineffective, and we think we can convince a jury across the board for everybody that under an objective consumer standard, the deceptive nature of these statements. You're a little bit over, but I did have one clarifying question on the menthol theory, and is the, maybe this is a fact question, but so the menthol packaging says it's additive free, but menthol's an additive, and is your theory that there was menthol added to the packaging, or that there was a, and I thought it was a menthol filter, and the smoke would come through the filter. That would be the flavoring. Yeah, it migrates, though. So it all, it migrates into the tobacco, and then everyone gets it. From the filter. Yeah, and so. Some of the chemicals go into the tobacco. Again, yeah, and again. And that's the additive. Yeah, and this question, again, we're not, we are not at like a liability merit stage of this case. So the defendants may be able to convince a fact finder that the statement is literally true. Like that is like perfectly acceptable, possible outcome of the way that this would play out. But again, because we're operating under this kind of objective standard for liability, causation, and damages, we are not in a position where there's anything individualized about that question or anything else. I just want to say that the problem is that something in the filter migrates into the tobacco part of the product. I realize, Judge Sinkrich, I never got to your question about the back end challenge of affidavits. I can do that now, or I can wait until I come back. All right, well, let's hear from Sam. You'll get your five minutes on rebuttal. Good morning, your honors, and may it please the court. A plaintiff has no... Please, enter your appearance. Oh, I'm sorry. Noel Francisco for Santa Fe Natural Tobacco. I apologize, your honor. A plaintiff has no cause of action or Article III standing unless he actually purchased natural American spirit cigarettes. But in this case, there's no way to determine that while protecting the defendant's rights unless you put every plaintiff on the stand subject to cross-examination, which would take years. That alone destroys Rule 23b3 predominance for both the safer cigarettes and the menthol classes. So you're saying that predominance includes an evaluation of whether there are differences among potential claimants? Yes, your honor, and particularly if the only way they can satisfy the most fundamental element of their claim, that they actually purchased the product, is by putting each plaintiff on the stand. Now, that problem would exist whether you're dealing with a class action or thousands of individual students. I think that's largely my point. It kind of comes in neutral, in a way. Excuse me? It applies regardless of the mechanism used for the lawsuit. I think that's true, but when it comes to class actions, the first question that you have to ask is, are individual issues going to predominate over the common ones? Remember, a class action is just a mechanism for aggregating individual claims. But it doesn't change anybody's rights, for better or for worse. I think it's pretty undisputed that an individual plaintiff lawsuit, the plaintiff would have to establish at the outset that she actually purchased the product, before a court could then proceed to adjudicate the merits of the claim or award any damage. If this were to proceed as a class action, they'd still have to prove it when they become a claimant. When they file their claim, we've declared a class action. We've reached a decision on the merits of liability. Now you want to make a claim, you have to prove you purchased them. They're not going to be deprived of any rights. Well, so a couple of responses to that, Your Honor, because I think they actually will. First of all, I'll accept for the sake of argument that all of this can happen at the back end, when everybody comes forward and tries to make their claim for damages. So at the back end, we have to have a million mini-trials to determine whether they purchased  If you don't have a class, you're going to have to have a million mini-trials also. Well, Your Honor, no. Then we'll have a bunch of individual lawsuits and we'll see who comes forward and actually files the individual lawsuit. The problem with the class action, it allows them to bring them all together and largely use it to coerce the settlement. And that's a lot of their... But to eliminate that attribute of a class action, isn't that the death knell for small value consumer claimants, that there is essentially no effective solution if you say that negates class action options? No, Your Honor, and I have a few responses to that very important question. The first is just to take it head on. No, there are plenty of small dollar class actions that will still survive, because in many cases, it's pretty easy to establish who actually purchased the product. Take your quintessential securities class action. Public records show who purchased the product, even if it's a penny stock. Or a Consumer Protection Act case against a bank or an online retailer, where bank records or retailer records are going to show who purchased it. The Supreme Court's decision in TransUnion is actually another good example of that. There, there were a group of plaintiffs who claimed that their credit reports were unlawfully disseminated to third parties. TransUnion's records showed whose records were disseminated to third parties. But I take your point. There are going to be... But for product liability cases, then, let me be more specific. You would pretty much negate any collective actions on product liability. You wouldn't negate it, but you would limit it. There are, and their amicus actually points to a lot of examples of where in the product liability context, there are records that the defendant keeps as to who purchased the product. Think of when you purchase a consumer item where you have to have, where you have a warranty. The warranty provides a record of your purchase. But there are going to be a lot of cases that get knocked out. That reflects the fact that 23b3 was always meant to be an adventure from the beginning. The Supreme Court has made that very clear. And one of the principal guardrails on that adventure is the predominance inquiry. It doesn't mean, though, that defendants go unpunished. Federal and state governments are charged with enforcing these consumer protection laws. One of the problems with an overly assertive interpretation of 23b3 is it undermines that law enforcement discretion by deputizing plaintiff's attorneys as private attorneys general. What do you mean by overly assertive? Well, you know, I could use this case as a perfect example because I think it's a perfect illustration of it. The Federal Trade Commission and 30 state attorneys general actually sued us, raising the very same claims that my friends are raising here. And we resolved that litigation by agreeing to disclaimers. The reason we're here today is because my friends don't like the disclaimers that 30 state attorneys general and the FTC agreed to. I'm sorry. You were talking about an overly assertive interpretation of the rule, not a description of the nature of litigation here. That's what I'm asking you about. You know, there I'll actually go to the three sets of circuits that have addressed what I'm calling the predominance inquiry to illustrate what I think is an overly assertive interpretation of Rule 23b3. If you look at the third circuit, the first circuit, and the fourth circuit on the one hand, and the second and the sixth circuits on the other, what all five of those courts say is that if you cannot determine whether or not somebody even purchased the product without putting everybody on the stand, that is either necessarily going to defeat or significantly undermine the ability to show predominance. Situate that within the specific text of the rule. How would we interpret what you're saying within the text of the rule? We're under 23b3d, right? Yeah, we're under... Is that right? Yes. 23b3d, the likely difficulties in managing a class action. That's one of four factors that the district court, within its discretion, weighs and balances to determine whether the predominance inquiry is met. Is that right? Well, to respond, you're right that we're under Rule 23d3. I start just by looking at the predominance inquiry, which says in the very first sentence you have to find that questions that are common to the class predominate over individualized questions, and if you literally do have to go through every plaintiff to decide whether they purchased the product, to determine whether they have a cause of action or Article 3 standing, that is necessarily going to defeat predominance. Now, my friends say... Well, I'm sorry. Your point is, though, I think, if I understand you correctly, you need to then keep reading, right? If the matters pertinent to these findings include, the matters pertinent to these findings of predominance and commonality superiority include, and there's four of them, so your position is that one can defeat, right? That under 23b3d, the district court could have concluded. I think I have two responses to that, Your Honor. The first is it doesn't have to fit into a, b, c, or d. The predominance inquiry asks if there are any questions of law or fact that are individualized and predominate over any common questions. So those are just illustrations. But secondly, my friend wants to put manageability, the fourth prong, under superiority, and that's the error that the 7th and the 9th and the 11th circuits made as well. If you actually read the text of the rule, it starts out by talking about predominance and superiority. Then it says, the matters pertinent to these findings include, and it lists four factors, the fourth one of which is manageability. So even if you thought this was just a manageability issue, the plain text of the rule makes clear that that's relevant to the predominance inquiry as well. And here, it's quite clear that the only way you can show that a plaintiff actually has standing to proceed and a cause of action is by asking, have they actually purchased the product? What would be, give us a few sentence definition of the word predominance. Predominance means what? Predominance means as a practical matter, when you litigate the case, are you going to be entwined in individualized issues over common questions? I don't dispute that.  That is, are you going to be more than half concerned with the individual? I think it's a practical inquiry, Your Honor, and I think practically you have to ask yourself, how is this case going to be tried? And I think one component of it is, are we going to be spending all of our time on individualized questions or common questions? All of our time, or at least most of our time. So are you again coming back to kind of a predominance question of more than, is it more than any other factor, or is it more than all of the individual factors? Because there's always going to be individual factors that damages cases. For sure. And there hopefully will always be common questions, or you wouldn't even think about a class action. So you've got both always. And most of the predominant cases I've focused on don't seem to worry a lot about the standing issue, because it's non-merit based, but it's always there and it's a big elephant in the room. So I think it's both the standing issue and the merits issue, because you don't have a cause of action at all if you didn't buy the product, or even if you think that we totally lied about our products and charged a huge price premium, if you didn't buy the product we didn't cause your injury. So it's still part of the analysis. But I do think it goes within the predominance prong. And remember, this is an abuse of... Does the importance of the issue calculate into what is predominant? I think it does. I think it's the importance of the issue, how much time you spend litigating it. It is trusted to the district court's discretion, and that's an important point I want to... Because all of those things. All of those things. And one of the important points I want to make is if you actually look at Judge Browning's opinion, he agreed with us in saying that he thought that the right answer actually was that this inability to determine who could buy the product should defeat class certification for both of the classes. Where he made his error is he then went on to say, but I actually think that the Tenth Circuit is going to align itself with the Seventh and the Ninth on the one hand, versus the First, Third, Fourth, Second, and Sixth Circuits on the other hand. So if left to his discretion, and under the right understanding of the rule, he indicated he would have exercised his discretion in our favor, but he mispredicted what you would do. I would urge you to take a close look at the Second Circuit's decision in the Petrobas case, because I think it is a very good analysis of the predominance question. I'm going to be very candid. At the beginning, what the Second Circuit did is it said it didn't agree with the Third Circuit's approach, where it put it all under the notion of ascertainability. But what it went on to say is that you really get to the same place under the predominance inquiry, because if in fact we do have to look at every individual plaintiff to decide whether or not they bought the product, that is going to be an overwhelming question when you're talking about a class action that has thousands, tens of thousands, and maybe millions of members. And that's basically our argument, that whether you look at it using the ascertainability language that the Third Circuit uses, or the predominance language that the Second Circuit uses, it gets you to the same place. I think the Supreme Court's decisions in Halliburton 2 and Amgen are really quite on point here. Now, those were securities fraud class actions. And what the court said was that generally in a securities fraud class action, the fraud on the market rule is what allows you to certify a class. But there are times when the fraud on the market rule fails. And the court made crystal clear that if the fraud on the market rule were to fail in a way that required individualized reliance determinations, that would necessarily defeat class certification. If I could quote the key language from the opinion, this is Halliburton 2. And without the presumption of reliance, a Rule 10b-5 suit cannot proceed as a class action. Each plaintiff would have to prove reliance individually, so common issues would not predominate over individual ones. Well, this is that in spades, because the most fundamental question, whether they even purchased the product, is going to require you to put every one of these potentially millions of plaintiffs on the stand. And no matter how important you think other issues are, I cannot see how they could predominate over a process that is going to take years, if not decades. You cannot see, but what is our standard of review on the question that the district court actually, the finding or conclusion the district court actually reached, which was that it was not going to do certification here? Sure. And it's the abuse of discretion standard, but with two caveats. One, if you make a legal error, that's an abuse of discretion. And two, the district court said, actually, in his opinion, that if it were left up to him, he would have ruled in our favor. What is the legal error? The legal error was that he thought that what the Seventh Circuit and the Ninth Circuit said was correct, which is that these individualized questions into whether or not you purchased the product can never, standing alone, defeat class certification. That's contrary to what the First, Second, Third, Fourth, and Sixth Circuits have said, Your Honor. What those courts have said, some have said, is it necessarily defeat certification? Others have said it at least can defeat certification. He thought it could never defeat certification. And if you look at the Seventh and Ninth Circuit decisions that go the other way, it's important to note that they do not even address the predominance question. They assume that this is solely an issue that goes to superiority and manageability, but they don't address predominance. We've actually looked at some of the briefs. We don't think that the predominance issue was even presented to them. But when courts like the Second and the Sixth have got it squarely, they said, Oh, this really is a predominance inquiry. And if you look at the analysis that the Third Circuit is doing, although it calls it ascertainability, what it is really doing is a predominance inquiry because it's asking, Can I determine this fundamental element? Did they buy the product in an administratively feasible way, or do I have to have many trials on every single plaintiff to figure it out? And if the latter, class certification fails because they use the term ascertainability, whereas the Second and the Sixth Circuits get to the same place using the predominance. Is ascertainability the same as administrative ability or administrative difficulties? Your Honor, I actually think it's just another way for that court to do the predominance analysis. Administrative feasibility asks, Does the defendant have records? Can we just have an expert look at the records and figure out who purchased the product or not? In a case like this, it's clear that there are no records that answer that. And instead, the only way to answer that question is by putting everybody on the stand. How should we be thinking about or should we be thinking about the nature of the industry in determining how challenging the ascertainability inquiry is here? There's no records of the purchases. You mentioned TransUnion as an example of where there were records. How should the absence of that, given the nature of the industry and the consumer product at issue, factor into our ascertainability? Well, Your Honor, respectfully, I don't think that the nature of the industry should factor into it at all. What you should be asking is, is the plain language of the rule satisfied? Well, the nature of the industry in terms of how we're supposed to think about whether there are records or not. Well, I'm not sure I'm following your question. There are no records. Nobody disputes that. There are no records. The reason there are no records is because this is a relatively small-dollar item. But the Supreme Court has made clear that a defendant absolutely has the right to insist on any defenses in a class action that it could have raised in an individualized case. That's exactly what the Supreme Court said in Wal-Mart. But that's asserting those rights at the liability stage. There isn't a case law that says they can assert those rights at the certification stage. My biggest concern in this case is, are we taking liability issues that are going to have to be dealt with at trial and when claimants are made, and are we moving all of that stuff into the certification stage, which is meant to be a bit of a more abbreviated process? That's my concern. Yeah, I guess I have two responses, Your Honor. One, I don't think we're doing that. But two, I don't think that it would matter. And I would like to start with the Supreme Court's recent decision in the Wal-Mart case, which I think is quite clear in stating that it does matter at the class certification stage. It's not kicking the can down the road. What the court specifically said was that because the Rules Enabling Act forbids interpreting Rule 23 to abridge, enlarge, or modify any substantive right, a class cannot be certified on the premise that Wal-Mart will not be entitled to litigate its statutory defenses to individual claims. And what Wal-Mart and cases like Shady Grove and the Sprint Against APCC case make clear is that all the class action device is a tool, an innovative and adventuresome tool, to aggregate individual claims. But it doesn't change any defendant's rights or remove any defense the defendant would otherwise have simply because you put all the cases together in a class. So could you hold all those rights to be asserted at the claimant's stage, at the administrative stage? No, Your Honor. And that's the second point that I wanted to make in response to your question. First, think about it as an individual case. If I came in as an individual plaintiff and I wanted to sue Santa Fe because they tricked me into buying their products and I paid a price premium, the first thing I would have to do is establish that I actually bought the product. If I didn't, I would be tossed out for lack of Article III standing and on a 12b6 motion to dismiss because I haven't stated a claim if I haven't purchased the product at all. What Wal-Mart makes crystal clear is that they don't get to short-circuit that process by suing in a class. Rather, cases like Steel Company make clear that Article III standing issues have to be determined before the court proceeds to adjudicate the merits of the claim so it can't be kicked to the end. Well, the ultimate right isn't going to be short-circuited because before you get a claim recovered, that will have to be decided. But you're saying it's got to be decided at the certification stage partly because there's some kind of a right not to have the expense of litigation, I think. That's not the basis. My argument is what you're saying, but that's not the basis of my argument. When a court certifies a class, what the court is saying is that every member of that class is now a plaintiff before me. Once it certifies a class and proceeds to rule on the merits, it's now saying every member of that class has succeeded on the merits of their individual claim. Steel Company tells us that you cannot make that second step unless you've got Article III standing over all of the individual claimants in the first place. That's why you need to be able to determine on a class-wide basis whether or not there's Article III standing. Now, this is a little bit different than what was going on in the LabCorp case, which I know you all are familiar with. LabCorp involved two different issues. One is the main issue was has the class been defined in a way such that everybody has Article III standing. We're not challenging that. They're defining the class as everybody who purchased the product. So by definition, everyone includes Article III standing. We're going to the second step and asking, okay, well, how are you going to prove that? And if the only way you can prove that in a realistic way is by putting everybody on the stand subject to cross-examination, that's directly relevant to predominance. Why is that the only way? I mean, what about affidavits? The premise of your argument is there's only one path. Why is that correct? Sure. I would point you directly to Judge Kayada's First Circuit decision in the N. He takes this on directly. What he makes clear is that the in-ray ASACOL, A-S-A-C-O-L. If the affidavits are uncontested, then yes, that works. But we have a right to contest the affidavits, particularly when you're talking about sales that occurred 10 years ago. Again, that goes back to Walmart where they say that you cannot short-circuit our defenses just because it's a class action. And we certainly will contest any affidavit when these are 10-year-old purchases, sometimes 20-year-old purchases, and there are no records of it. We have a right to insist that they meet their burden of proof. We don't have to just take their say-so. Judge Kayada takes that on directly in the in-ray ASACOL case and says affidavits don't work if the defendant is contesting the affidavits. That's what we have here, and that's why it requires all of these. So the back-end inquiry, we'll say that they have the right at that claims situation. If it gets to that, would you be able to challenge each claimant's understanding of the packaging, or is it simply a binary, did you buy the cigarette or not? About 100 percent, my view is we would have a right to challenge everything. So we could challenge whether or not they purchased the product. We could challenge whether or not they purchased the product before or after they saw the disclaimer. In our view, if they saw the disclaimer, then they weren't deceived at all. We could say that even if you didn't see the disclaimer before you purchased your first pack, you saw it after you purchased your second pack because it's on the package, all of those issues would be wide open. Why doesn't the reasonable consumer expectation test take care of that problem? For a couple of reasons, Your Honor. First, you have to ask what would a reasonable consumer have thought based on what they looked at. What Judge Browning said in this case is that you essentially have two different groups of consumers. One group of consumer just saw additive free, the descriptor on the pack. Another group of consumers just saw maybe additive free alongside of disclaimer. So they saw two different sets of representations. So you've got two different liability questions. It's as if they were buying two different products. And you've got to figure out whether you fall into bucket one or bucket two. And that, in and of itself, is an individualized determination that you're going to have to reach. Now, my friend was saying that, in their view, the disclaimers fail across the board. It's fine. I get that that's their argument. Our argument is the opposite, and I think it's more than a reasonable one. If the jury were to accept our position, it is going to have to figure out whether you fall in bucket one or bucket two. That's the second reason why Judge Browning found that the safer cigarettes class should not be certified. Why aren't the two buckets themselves the result of a legal error on the district court's part in implementing the reasonable objective standard? Because, Your Honor, I think that within each bucket, you do the reasonable objective standard. So you ask, if you have a group of people that only saw the descriptor, would a reasonable person have been deceived just by the descriptor? If you have another group of people that saw the disclaimer, you ask, and I think my friends agree with this, would a reasonable person have been deceived by the disclaimer? Their position is a reasonable person would have been deceived by the disclaimer. Our view is the opposite. If we prevail before the jury, and Judge Browning was clear that this was ultimately a jury question, if we prevail before the jury, you've got to figure out whether you're in bucket one or bucket two because you saw two different sets of representation. So that was the second error with respect to the safer cigarettes class. I know my time is out. I wanted to touch on the Comcast error. Just quickly because you'll get five minutes. And I think the Comcast error is particularly significant. Judge Browning got it right on safer cigarettes, wrong on menthol. I'd like to just take a minute on the menthol theory. On the menthol theory, their theory, as my friend explained to you, is that the menthol migrated from the filter into the tobacco. So when a purchaser of menthol cigarettes, somebody who by definition wanted menthol flavor, purchased the cigarettes, they were tricked into not understanding that the menthol started in the filter and migrated into the tobacco. So the Comcast question is, how much more did they pay because they did not understand that the menthol and their menthol cigarettes started out in the filter and migrated into the tobacco? The answer to that question is almost certainly zero, which is why their expert doesn't even attempt to answer that question. And that's the Comcast error. Your damages model has to be tied to your theory of liability. If it's not, it's as if you have no damages model at all, and damages become yet another individualized question. Judge Browning understood that properly for safer cigarettes, but respectfully we think he erred when it came to the menthol cigarettes. Thank you. Amy, why don't you give Mr. Wessler, we'll do a seven and seven rebuttal just because we've asked a lot of questions. You don't have to use it all if you don't want. Thank you, Your Honor. I guess, Matthew Wessler again for the plaintiff's appellants. I think I want to pick up on the back end set of questions, if that's okay, and then we can move to the front end. But Judge Ebel, I think you are exactly right. What the defendants are asking this court to adopt is a categorical rule that in any small dollar consumer or antitrust case in which a consumer would go into a store and purchase a product, those cases are incapable of being certified under Rule 23. That is the upshot of their rule that they are asking this court to adopt. They have several different reasons why they think that's right, but the end outcome here isn't that there is some kind of balancing that should take place. They think that as a categorical matter, in any case where there aren't records of purchases or some other uniform documentary way of demonstrating as an objective matter who purchased the product, you can't certify the class. That is exactly the opposite of the reason why Rule 23 exists. When it was first adopted, the whole point, this is in the committee notes to the rule, it was designed to allow small dollar claims to be banded together to be pursued on behalf of all of the claims. So if you actually endorse the rule that the defendants are asking you to endorse, it will do the exact opposite of what Rule 23 is designed to do. Now, there is a question here about these back end, you know, who is in the class? Okay, how do we identify who is in the class? Wal-Mart does say, you know, what it says about approving the elements of a claim and defendants still get those rights. Absolutely. How does that play out? Absolutely. You know, that's true for a small dollar. Absolutely. This gets us back finally to your question about do defendants have a Seventh Amendment due process right to challenge everybody's affidavit. And I can't do any better. I'll just tell you the pin site for the decision of this court in In Re Urethane. There's a whole section from that decision. It's labeled Seventh Amendment. It looks at this exact question.  Does a defendant have In Re Urethane antitrust litigation? The pin site is 768F3 at 1269. Okay? It's this whole section where this court looks precisely at the rights, the due process or Seventh Amendment rights that a defendant has on the back end in a class action. Okay? And what it says, and I'm just going to quote the language. Well, it's a little tricky to quote, but the defendants make this Seventh Amendment argument. They say we have a right to challenge all of this stuff on the back end. And what this court said was we reject this argument because Dow, who is the defendant in that case, has no interest in the method of distributing the aggregate damages award among the class members. What's really key here is that when we're talking about a case like what was going on in the urethane decision or what we're talking about here is a case in which the total aggregate amount of damages is fixed. There is no uncertainty about how much the defendant will owe if there is a liability finding and a jury believes the plaintiff's damages expert. The key is the damages you're measuring are the unjust enrichment of the defendant rather than accumulation of injuries by a bunch of claimants. I hadn't appreciated until just this moment how important it was that you brought this case in part as an unjust enrichment case. How much did the defendant extract from the consumers based on its unlawful labels? And that is a fixed number per pack. It's a specific number. It does not fluctuate depending on which statement a jury finds unlawful. And it doesn't fluctuate at all in the aggregate because we know, the defendants know down to the pack, how many packs they sold. And so you heard my friend on the other side say, go look at the First Circuit's decision in In Re Athicol. That's the Judge Kayada decision. I absolutely would encourage you to go look at that case because what is going on there is very different from what we have here. In that case, which was a question about the unlawful delay of the entry of a generic drug into the market, you had a completely uncertain amount of damages. You didn't know how many people would have bought the generic drug had it been on the market for longer. And so in that setting where you don't have fixed aggregate liability, there are potential problems about evaluating who might have purchased the product when. Were they brand loyalists? Would they have purchased the brand name instead of the generic? You didn't know. But the First Circuit has another case that looks at this issue in a different context. It's called In Re Nexium, 777F3 at 20. And what it says there is affidavits are a perfectly acceptable method for demonstrating who is entitled to recover out of a common fund, especially in a case where the aggregate liability is fixed. The Seventh Circuit in Mullins, a case we cited, both sides have cited Mullins. It's one of the cases that rejects this ascertainability requirement that the defendants are asking you to adopt. In those cases, the defendant can still challenge the affidavit on whatever grounds it thinks it has. Here's, to answer that question. All the affidavit is is a statement that I bought the product. But what the Seventh Circuit said is where, this is at page 670 of the decision, where the total amount of damages can be determined in the aggregate, where you know ex ante, before we get there, how much exactly will the defendant owe. Down to the penny, where we know that. This is what the Seventh Circuit said. The identity of particular class members does not implicate the defendant's due process interest at all. Because a defendant, once liability has been set and once the damages amount is fixed, it does not have any interest in who, which of the claimants are coming forward to recover out of the common fund. So it said the addition or subtraction of individual members affects neither the defendant's liability nor the total amount of damages it owes to the class. I think this is really key. That is the world we are in in this case. Now, even if we were to just take a step back, okay, and say maybe there would be some individual issues related to damages. This court and other circuits uniformly have said that that issue is not capable of defeating class certification. And this kind of question, this back end, what will happen, we have this right, I mean, this is the dog that never barks. There is not a single case, a single case that the defendants have identified to you, I'm not aware of any, where this issue has actually occurred in the real world. It is one of these speculative hypothetical arguments that gets made all the time. But when it actually comes down to it and you are sitting at the end of this case, which we're now ten years into it, you know, another however many years, where you're sitting potentially on a jury finding of liability and a measure of damages, that's it. The defendant does not care because their liability is fixed. Go ahead and wrap up. Can I ask just one question that has nothing to do with, I'm just curious about it. What happens to the excess money in the class if you pay it calculated on the total overpayment, overcharges, and not nearly as many claimants file a claim? Yep, yep. But what happens to that extra money? Well, there are mechanisms in place to do additional notice efforts to try to get more people. Yeah, but that's the judge's favorite charity. There are CyPray doctrines that have been used by courts to send that money to the next best option, basically, which is, you know, it's its own thing. But district courts have developed strategies for figuring out what to do in those situations. I mean, this is destined to have a lot of unclaimed money, I think, and I'm just curious. Yeah, I mean, I don't know what would happen in a case like this, and I'm an appellate lawyer, so I don't know exactly how this plays out on the ground. But, you know, the total amount of liability in this case is absolutely fixed down to the penny, and that's why this idea that what the defendant really needs to do is challenge these class members is both untrue, I think as a controlling question that this court has already decided it in regular thing, and also just as a practical matter, never occurs. There isn't a single case where this has actually happened. I could just make one last point, which goes back to the merits, because, Judge Tinkovich, I have heard you ask several times, well, why doesn't the sort of subjective preferences of these individual consumers matter? And the best I can do is to, again, tell you that every circuit that has looked at that question, in the context of state consumer protection claims like this one that involve fraudulent or deceptive labeling and in which the damages, that the theory of liability is that, that deceptive claim is unlawful, and it allowed the defendant to charge more for the product than they otherwise would have, has said explicitly this is that, as an example, but it's not the only one. Carrullo, this is the 11th Circuit case, 823 F. 3rd at 985. This is just, this is exactly the argument the defendant is making here, and the court said the mental state of each class member is irrelevant. That's the actual language that the 11th Circuit used, and then that the defendant is incorrect to suggest, in these cases, that the plaintiff must prove that every class member saw the label and was subjectively deceived by it. And you're saying that was Judge Browning's principal error in the safer cigarette claim? I think Judge Browning's principal error was that he resolved a merits question about the significance of the disclaimer. That question, the significance of the disclaimer, rises or falls one way or the other across the class, and it should have been something that was left for the merits. What he should have done was recognize that the question of what impact does the disclaimer have on the objective reasonable consumer standard is a question that will either be answered by the jury in favor of the plaintiffs or in favor of the defendants, but either way will apply across the board on liability to the whole class. Thank you. Thank you, Your Honors. This is 100% not a case where damages are fixed. What my friend is talking about is your quintessential common fund case. Let me give you a couple of examples of common fund cases. You've got 50 employees that are saying they are collectively entitled to a $50 million pension fund. The employer has no right to those $50 million. The employees collectively have a right. The employer doesn't care how it's divided up. He's out $50 million no matter what. If you go back in time, you'll look at cases brought by shipping crews, claiming that the crew of a ship was collectively entitled to 5% of the bounty of the ship. It doesn't matter how many crew members are ultimately entitled. They collectively get 5%. That's exactly what in re-urethane was, a common fund case. My friend quoted from the decision, but he left out the key sentence that was the last sentence in the paragraph that he read. This is that sentence. Dow cannot complain about the uncertainties inherent in an aggregate damages award because Dow never requested individualized findings on damages. Dow agreed in that case to treat it as a common fund case. In a typical class action, total damages are simply the sum of the damages that flow from each valid claim. Now, my friend relies very heavily on the Seventh Circuit's decision in the Mullins case. Now, I think Mullins got a lot of things wrong, but the one thing that Mullins got right was this very issue. Mullins describes the different types of class actions, and then he gets to this type of class action, and here's what the Seventh Circuit said in Mullins. The total damages cannot be determined in the aggregate, but there is a common method of determining individual damages. Most consumer fraud class actions fit this model. In this situation, the Seventh Circuit explained, the defendant's due process interest is implicated because the calculation of each member's damages affects the total amount of damages it owes to the class. So 100% this is not a common fund case. Instead, total damages equal the sum of each valid claim and the amount of damages you award to each valid claimant. Is unjust enrichment a common fund? Because that claims that they were enriched improperly, and that doesn't look to who the actual injuries were. So why isn't that a common fund? Because, Your Honor, even in unjust enrichment claims, they're bringing a claim on behalf of themselves, and they've got to establish their own damage. I think a lot of this goes back to the sort of fundamental point that a class action is simply an aggregation of individual claims. In an individual claim, even an individual unjust enrichment claim, an individual plaintiff would have to come forward, would first have to show that I bought the product. If they didn't buy the product, they're out on their ear. They can't bring an unjust enrichment claim or anything else. If they bought the product, then you proceed to adjudicate the merits of the claim and you ask would a reasonable consumer in their position, depending on what they saw, disclaimer versus descriptor, would they have been deceived? If so, what was the injury? But you still have to jump through all of those hoops. And if those initial hoops require individualized determinations, then you never get to the damages issue. Because damages go to standing and to whether or not you have a viable cause of action at all. And Walmart tells us you don't get to short-circuit our individualized defenses that challenge whether they have Article III standing and whether they have a cause of action simply because they're joining part of a class. Now Judge Browning actually agreed with us on this, and he certainly agreed that it was relevant to the predominance inquiry. What he concluded that it wasn't relevant all by itself. That's what explains the split decision between safer cigarettes and menthol, the menthol classes on safer cigarettes. He said, yes, this individualized question is a problem. But a problem, if that's all there was, I wouldn't certify the class. But for safer cigarettes, I've got the purchase problem, whether they saw the disclaimer problem, and the Comcast damages issue. And when I put all three of those together, that's enough to deny class certification. When he turned to the menthol classes, he said that all I have is whether or not they purchased the product. Although that is an individualized question that is relevant to predominance. And Judge Browning said, if left to my own druthers, I would probably deny certification for that reason alone. He predicted that you would align yourselves with the Seventh and the Ninth Circuits and say that that can never alone defeat class certification. That's the error he made on the menthol side. So to agree with you on that, we would have to construe that as a legal error and review it either as part of the abuse of discretion standard or whatever. But we have to understand it as not just a purely discretionary weighing determination. Yeah, I think you can understand it in a couple of different ways. One is that it's a legal error. And two, you have Judge Browning on the record saying, this is how I would have exercised my discretion on my own, but I felt constrained by a misprediction, we hope, a misprediction in how this court would establish a legal rule. I appreciate that that's perhaps a fair description of his ruling. What I'm trying to understand is if we are to construe this as a legal error, however packaged, under whatever standard or review, what is it that compels this as a legal error? There was a disagreement, you say, within the circuits. What is it under the rule that suggests that he erred? Sure. Because if you just start out with the rule, the predominance inquiry says, do any common questions outweigh any individualized questions or vice versa? Any. And so to adopt a rule, as the Seventh and the Ninth Circuits have, that says that individualized questions about who purchased the product can never defeat predominance as a matter of law, and that's the rule in the Seventh and the Ninth Circuits, as my friend described, that is a legal error. And you understand Judge Browning to have thought he was operating under incorrect understanding of the law? Yes, Judge Browning was quite clear. He said, if it were just up to me, I would probably go along with the way that the Third Circuit has analyzed this issue. But he predicted that you would go along with the Seventh and the Ninth Circuits. I would add into the Third Circuit the Second and the Sixth Circuits. I think those two courts' decisions are particularly good on explaining why this really is a predominance problem, and at the very least can alone defeat predominance. So one way to resolve this case is to say, look, Judge Browning got it right on the safer cigarettes class. There were a bunch of things going on. In the exercise of his discretion, he got it right. When it comes to the menthol class, he did misunderstand how we would apply the legal rule. We don't agree with the Seventh and the Ninth Circuits. We think that the Second and the Sixth Circuits got it right, so we should send it back to him to exercise his discretion in light of what we think the correct rule is. Thank you, counsel. We appreciate the arguments this morning. In traveling to Denver, your excuse in the case will be submitted. Thank you, Your Honor.